The STATE of Ohio, Appellee,

v.

BELL, Appellant.

[Cite as *State v. Bell* (1994), 97 Ohio App.3d 576.]

Court of Appeals of Ohio,
Lake County.

No. 93–L–041.

Decided Sept. 19, 1994.

*Steven C. LaTourette,* Lake County Prosecuting Attorney, and *Ariana E. Tarighati,* Assistant Prosecuting Attorney, for appellee.

*Michael A. Partlow,* for appellant.

FORD, Presiding Judge.

This appeal comes from the Lake County Common Pleas Court where appellant, Glenn V. Bell, was convicted on two counts of perjury in violation of R.C. 2921.11, a felony of the third degree.

Appellant was married to Ann Bell for twenty-two years. The marriage ended in divorce pursuant to an April 7, 1989 decree. Even though the divorce decree was not finally executed by the court until April 7, 1989, appellant's child support obligations had been previously established. On March 15, 1989, appellant filed a motion to modify child support and spousal support in the Lake County Domestic Relations Court. The two affidavits which were attached to the motion are the subject of appellant's perjury conviction. Appellant claimed in those affidavits that he was unemployed and had experienced a decrease in income that warranted a decrease in his support obligations. This motion to modify was ultimately withdrawn by appellant.

On August 4, 1992, a two-count indictment was issued against appellant. The first count pertained to false statements made by him in a status hearing affidavit dated February 9, 1989. The second count pertained to false statements made by appellant in an affidavit dated March.10, 1989. Both affidavits were attached to the motion to modify child support, which was filed on March 15, 1989.

Appellant entered a "not guilty" plea on both counts and was tried by a jury and found guilty on February 9, 1993. After a presentence investigation was conducted, appellant was sentenced to a definite term of incarceration of one and one-half years on each count to run concurrently and fined the sum of $2,500 on each count. Appellant filed a timely notice of appeal and asserts the following assignments of error:

"1. The trial court erred, to the prejudice of the appellant, by failing to grant the appellant's motion for a judgment of acquittal pursuant to Crim.R. 29.

"2. The trial court committed reversible error, to the prejudice of the appellant, by failing to instruct the jury on the lesser included offense of falsification.

"3. The appellant's convictions were not purported [*sic*] by sufficient evidence.

"4. The trial court erred and abused its discretion in sentencing the appellant to a term of one and one-half years' incarceration."

 In his first assignment of error, appellant maintains that the trial court erred in overruling his motions for acquittal pursuant to Crim.R. 29(A). It is well settled that a motion for judgment of acquittal should be granted only where reasonable minds could not fail to find reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 264, 9 O.O.3d 401, 402, 381 N.E.2d 184, 186. A court cannot enter a judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399.

 In the instant case, the state had the burden of proving the elements of perjury under R.C. 2921.11, which reads as follows:

"(A) No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, * * * when [the] statement is material.

"(B) A falsification is material, regardless of its admissibility in evidence, if it can affect the course or outcome of the proceeding. It is no defense to a charge under this section that the offender mistakenly believed a falsification to be immaterial."

Both of appellant's Crim.R. 29(A) motions were based upon his claim that the state failed to produce any evidence indicating that appellant's false statements were "material." He supports his argument with the fact that appellant's motion to modify was ultimately withdrawn so that the statements did not actually result in a decrease of support. Appellant further argues that since a hearing was not held on the motion after it was filed, there was no substance to the perjury charge.

The plain language of R.C. 2921.11(B) is that a statement is false if it *can* affect the outcome of a proceeding, not if it actually affects the outcome. Thus, appellant's argument that his withdrawal of the motions made it impossible for the affidavits to be material is groundless.

As to both counts, the statements alleged to be false are appellant's assertions in the affidavits that he had no other source of income aside from his own tax business, and that he expected to make $7,000 in net income for the year. The state contended that appellant expected to make between seven and eight times more than that. Additionally, as to the affidavit at issue in Count 2, the state's contention is that appellant falsely swore that he was terminated from his employment with Manfredi Transit Company on January 6, 1989 because of a staff reduction, when in actuality, he voluntarily resigned his position but continued working there in his capacity as treasurer.

In its case-in-chief, the state called Referee Fram from the domestic relations court. Referee Fram testified that if there is a change in a payor's financial situation, he or she may ask the court for a modification of child support. Referee Fram further testified that the amount a person pays is based on various factors, such as income, which correlate directly to that person's ability to pay. He also testified that a person keeps the court updated about these factors through the use of status affidavits, such as the one at issue in Count 1 of the indictment. Specifically, he confirmed that when a person comes into court and swears to the truth and veracity of the status affidavit, that information is then accepted as the prima facie status of the person's income.

William McCarter, appellant's attorney in the child support matter, testified that the motion to modify was filed in an effort to decrease appellant's support payments, and that the affidavits attached to the motion were signed by appellant and notarized. He further testified that once a motion to modify is filed with the clerk of courts, the motion is given to the domestic relations court, where it is used to schedule and begin proceedings for a pretrial hearing.

Furthermore, we are aware that Loc.R. 12(A) and (B) of the Court of Common Pleas of Lake County, Domestic Relations Division, require that a motion requesting modification of child support be supported with an affidavit, and that prior to the time of hearing the motion, each party must complete the court-approved income and expense statement. Thus, it is clear that the affidavits at issue here are required by rule and are starting points in establishing prima facie evidence of material elements in the determination of child support modification, i.e., income and employment.

Also, clearly the motion to modify and the affidavits attached could have affected the outcome of the case in that if they were accepted as true, and appellant's support was modified, appellant would have succeeded in lowering his support payments. Though we do not contend that every false affidavit filed in an official proceeding is material to that proceeding, we conclude that in this particular case, the state successfully established that the statements contained in the affidavits were material under the statute. Therefore, the fact that the

motion to modify with the supporting affidavits were filed so that the court could have initiated proceedings and taken future action created the element of materiality in this case. Hence, the trial court did not err in overruling appellant's Crim.R. 29(A) motions for acquittal. Appellant's first assignment is without merit.

Turning now to appellant's second assignment, he argues that the court committed reversible error by failing to provide a properly requested jury instruction on the lesser included offense of falsification under R.C. 2921.13(A)(1) or (6).

There is a three-prong test for determining whether an offense may be a lesser included offense of another. If "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense * * *." *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus.

Falsification under R.C. 2921.13 provides:

"(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:

"(1) The statement is made in any official proceeding.

" * * *

"(6) The statement is sworn or affirmed before a notary public or other person empowered to administer oaths."

■ A violation of this section constitutes a misdemeanor of the first degree. Therefore, as perjury is a felony of the third degree, falsification carries a lesser penalty than perjury, which satisfies the first *Deem* criterion. As to the second *Deem* criterion, we can conceive of no situation in which perjury could be committed without falsification being committed. Further, perjury, the greater offense, requires proof that the false statement was "material." There is no such element required to prove the commission of falsification, the lesser offense. Accordingly, falsification under R.C. 2921.13(A)(1) and (6) is a lesser included offense of perjury. See *State v. Peterman* (July 28, 1992), Adams App. No. 521, unreported, at 7–8, 1992 WL 188496.

■ We look now to the question of whether a falsification charge should have been given to the jury. Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support

both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Kidder* (1987), 32 Ohio St.3d 279, 280–281, 513 N.E.2d 311, 313–315; *State v. Campbell* (1991), 74 Ohio App.3d 352, 358, 598 N.E.2d 1244, 1248. If the evidence should support both an acquittal on the greater offense and a conviction on the lesser included, common sense dictates that our review focus on the evidence relating to the element of "materiality," the element not required to be proven for the offense of falsification.

We have already determined in our analysis under appellant's first assignment of error that the evidence table and record reveals that the jury could have found that appellant's statements in the subject affidavits were "material." Thus, appellant's substantial rights were not prejudiced by the court's decision not to give a lesser included instruction because the evidence presented would not have reasonably supported an acquittal on the crime charged. Crim.R. 52(B). Appellant's second assignment of error is not well taken.

In his third assignment, appellant avers that the verdict was not supported by sufficient evidence. Specifically, appellant alleges that (1) there was no evidence presented tending to show the alleged statements were "material," and (2) where both counts pertain to affidavits, and there is no evidence presented that the February 9, 1989 status hearing affidavit (State's Exhibit 1) was properly executed before a notary public.

Pursuant to *State v. Seiber* (1990), 56 Ohio St.3d 4, 13, 564 N.E.2d 408, 419:

" 'A reviewing court will not reverse a jury verdict when there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.' * * * " (Citations omitted.)

"In a review for sufficiency, the evidence must be considered in a light most favorable to the prosecution." *State v. Smith* (1991), 61 Ohio St.3d 284, 289, 574 N.E.2d 510, 515.

We note that appellant's allegations regarding the sufficiency of the evidence table on the element of "materiality" have already been discussed thoroughly in the first and second assignments and will not be repeated here.

With respect to the second issue regarding the February 9, 1989 status hearing affidavit, we note that appellant did not object to the introduction into evidence of this affidavit. In fact, he declared it to be "fine." Therefore, any objection he now has to the authenticity or execution of that document is waived. Also, William McCarter, appellant's attorney in the child support modification proceeding, testified that the February 9, 1989 affidavit contained the stamp and signature of a notary public, and that he attached it to the motion to modify, which he prepared on appellant's behalf. Moreover, our own review of the

affidavit indicates that on February 9, 1989, appellant signed the affidavit, which was properly sworn before and subscribed by Lynn Andrews, whose official notary stamp is affixed to the bottom of the affidavit.

■ Furthermore, the entire evidence table is sufficient to support the jury's verdict as to each element of perjury under R.C. 2921.11. The testimony at trial revealed that appellant was hired by Manfredi Transit on March 1, 1981 and was allegedly terminated from his employment there on January 6, 1989. Appellant alleged that he was later rehired sometime in June 1989 and terminated again on April 1, 1991. However, no reinstatement form was found showing that he was rehired as he claimed. A reinstatement form is typically used in rehire situations at Manfredi Transit. These facts, taken together, reasonably support the conclusion that appellant was never actually "terminated." Further, with respect to this alleged "termination," Richard Manfredi, owner of Manfredi Transit, testified that appellant was not indeed "terminated" from his employment due to a staff reduction, but had instead voluntarily resigned for various reasons.

After appellant's supposed "termination," he was still receiving income from Manfredi Transit through a corporation known as MGM. MGM was listed on Manfredi Transit's records as a company that performed tax services for Manfredi. MGM was owned and operated by appellant's second wife and stepdaughter, but its address was that of appellant's home. Appellant admitted that after his "termination" from Manfredi Transit, he still completed its tax returns and was being paid for that service through MGM. Also, after this "termination," appellant continued to sign checks, okay payments, and act in his former capacity as treasurer of MGM. Appellant admitted in his deposition and at trial that Manfredi agreed to bill MGM for his services at his request.

Appellant's income for 1989 as reported on his W–2 from Manfredi was $53,027.41. However, in the affidavits appellant listed his anticipated income for 1989 as $7,000 to be received solely from his own tax service business. Appellant also maintained that this $53,027.41 figure represented the payment for services rendered after he was "rehired" in June. However, his tax returns for 1988 and 1990 showed that he earned $40,000 and $47,000, respectively, for the entire twelve months of both years. Thus, it was reasonable for the jury to have concluded that the $53,027.41 figure for 1989 was not representative of a six-month period but instead covered services rendered for the entire year.

Based on the foregoing, we conclude that the evidence as a whole was sufficient to show that regardless of appellant's title as an "independent contractor" after January 6, 1989, he was, in fact, employed by and receiving income from Manfredi during a time when he avowed to be unemployed, and in an amount which he knew would be much greater than that which he stated in the subject affidavits. Appellant's third assignment of error is not well taken.

■ Last, we turn to appellant's fourth assignment in which he asserts that the trial court committed reversible error by sentencing him to one and one-half years' incarceration on both counts to run concurrently.

R.C. 2929.12(C) establishes the trial court's discretion in determining a minimum term of imprisonment for a felony. Citing authority from both the Supreme Court of Ohio and a host of appellate courts, this court has recently stated that when a sentence is within the statutory guidelines, a reviewing court will presume that the trial judge followed the standards set forth in R.C. 2929.22 and 2929.12, absent a showing to the contrary of an abuse of discretion. *State v. Conroy* (Dec. 17, 1993), Geauga App. No. 92–G–1735, unreported, at 5, 1993 WL 548452. We further noted in *Conroy* that " 'a presentence report or some other evidence that the trial judge considered the statutory factors satisfied the law.' " *Id.* In the instant case, the court conducted a presentence investigation prior to pronouncing sentence upon appellant.

Further, as stated in *Conroy* at 7, the predicate determination underlying a reversal for resentencing is that the respective sentences are overly harsh and inappropriate. However, appellant is not disputing the fact that his sentence was within the guidelines set forth in R.C. 2929.11. In fact, appellant was given neither the maximum sentence of three years, nor the maximum penalty of $5,000 on either count. Moreover, the sentences were ordered to be served concurrently rather than consecutively. Thus, even if the trial court had erred by not considering the appropriate statutory factors, appellant was in no way prejudiced by such omission.

Accordingly, based on the foregoing, we conclude that the trial court did not abuse its discretion in sentencing appellant. Appellant's fourth assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY and CACIOPPO, JJ., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.