OPINION
Appellant, Mark A. Nicholas, appeals from the judgment of conviction and imposition of sentence by the Portage County Court of Common Pleas entered upon a jury verdict finding him guilty of felonious assault. For the reasons that follow, we affirm the judgment of the trial court.
The following facts are pertinent to this appeal. On the night of June 21, 1997, Aaron Crites ("Crites"), appellant's cousin, and the victim, Ezell Starks ("Starks"), unexpectedly met each other at a local bar, Brick's Tavern. Crites and Starks, who were high school acquaintances and had not seen each other for some time, decided to have a few drinks together. Eventually, the two left Brick's Tavern and went to another bar, the Windham Tavern.
Upon entering the Windham Tavern, Crites noticed appellant sitting at the end of the bar with his head down. After briefly speaking with appellant, Crites determined that he "had drank quite a bit" and decided to take him home. Crites asked appellant to find his keys in an effort to make sure appellant could enter his home when he was dropped off. While appellant was searching his pockets, Crites noticed that appellant had a partially open knife in his right-front pocket.
Because appellant was somewhat unsteady on his feet, Crites and Starks assisted him to Crites' car and placed appellant in the front passenger seat. Starks climbed into the rear passenger seat for the short trip. Upon arriving at what was believed to be appellant's home, Crites pulled the car to the curb. Both Starks and Crites helped appellant out of the car.
When Crites turned around to close the car door, he heard Starks say, "Man, what are you doing? Let go of me." Crites turned around to see what was happening and saw appellant and Starks wrestling on the ground. Starks testified that when he tried to get back into the car, appellant had grabbed him around his neck, and in an effort to force appellant to release his grip, he slammed appellant to the ground. This testimony was corroborated by that of Crites who testified that when he turned around he saw appellant on the ground on his back with Starks on top of him also on his back.
Crites ran over to the two men and separated them. When Starks stood up, he noticed that his neck was hot and burning. He put his hand to his neck and noted that it was covered with blood. Starks told Crites that his neck was cut. Crites looked at Starks' neck and saw a long cut from Starks' left ear to his windpipe. Sometime during this exchange, appellant, unaided, got up off the ground and fled the scene.
Crites obtained a towel from the back of his car to place on the cut and drove Starks to Robinson Memorial Hospital. Starks was treated for an approximately four inch laceration that required thirty stitches to close. The treating physician noted that the cut was consistent with a knife wound.[1]
The Windham Police Department was notified of the attack and of the identification of the possible suspect. Based on this information, appellant was apprehended a short time later. At the time of appellant's arrest, several officers noted that he had been drinking and that there were blood stains on appellant's clothing. Tests later revealed that the blood on appellant's clothing came from Starks. In addition, the police also found a knife on the ground where appellant had been sleeping before his arrest. The knife also had traces of Starks' blood on the blade.
Appellant was subsequently indicted by the Portage County Grand Jury on one count of attempted murder in violation of R.C. 2903.02
and R.C. 2923.02, and one count of felonious assault in violation of R.C. 2903.11. On November 14, 1997, the Portage County Grand Jury returned an amended indictment on the felonious assault charge. As a result of the amendment, the state moved the trial court to nolle the original indictment with respect to the felonious assault charge. The trial court granted this request.
The matter proceeded to trial on December 2, 1997. After hearing all of the evidence, the jury returned a verdict of guilty on the felonious assault charge. However, they were unable to reach a verdict as to attempted murder. Consequently, the trial court declared a mistrial with respect to the attempted murder charge.
Appellant filed a motion for a new trial which the trial court denied on December 30, 1997. On the day set for sentencing, the state filed a nolle prosequi on the charge of attempted murder. The trial court granted the request and subsequently sentenced appellant to seven years for felonious assault, crediting three hundred and three days for time served. Appellant perfected a timely appeal and asserts three assignments of error for our consideration:
 "[1.] The Defendant-Appellant's constitutional rights to due process under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were prejudiced by the ineffective assistance of counsel.
 "[2.] The trial court erred to the prejudice of the Defendant-Appellant in denying the motion for acquittal made pursuant to Criminal Rule 29(A).
 "[3.] The trial court erred to the prejudice of the Defendant-Appellant when it returned a verdict of guilty against the manifest weight of the evidence."
In his first assignment, appellant submits several errors which he argues are tantamount to ineffective assistance of counsel on the part of his trial attorney. Each argument will be taken in turn. However, before we proceed to address appellant's contentions, it is first necessary to set out the applicable standard of review that we will utilize in our analysis.
To be successful on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test originally articulated by the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668, and adopted by the Supreme Court of Ohio in State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, State v. Sherman (June 25, 1999), Portage App. No. 98-P-0009, unreported, at 2-3, 1999 WL 454533.
First, a defendant must be able to show that his trial counsel was deficient. Bradley at 141. This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the "counsel" guaranteed by both the United States and Ohio Constitutions. Id. A defendant making such a claim must prove that his/her trial counsel's representation fell below an objective standard of reasonableness. Id. at 142, citingStrickland at 687-688. See, also, State v. Sallie (1998), 81 Ohio St.3d 673,674. Moreover, there is a strong presumption in Ohio that a licensed attorney is competent. State v. Smith (1985),17 Ohio St.3d 98, 100. To overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance. State v. Rudge (Dec. 20, 1996), Portage App. No. 95-P-0055, unreported, at 12, 1996 WL 761161.
Generally, debatable strategic and tactical decisions will not form the basis of a claim for ineffective assistance of counsel, even if there had been a better strategy available. Id. See, also, State v. Phillips (1995), 74 Ohio St.3d 72, 85. As a result, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel. Id.
In addition to proving that trial counsel was deficient, a defendant must also show that the deficient performance prejudiced the defense. Bradley at 142. This requires a showing that there is "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id.
at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome.Id. at 142.
In Strickland, the court provided further guidance to courts in determining whether or not a defendant has been prejudiced by trial counsel's ineffectiveness when it stated that:
 "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors of the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Strickland at 695-696.
Accordingly, a reviewing court must always remember that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.
In his first argument under this assignment, appellant contends that he was denied effective assistance of counsel because his attorney failed to request certain experts for the purpose of testifying on his behalf. In particular, appellant claims that an expert on intoxication was necessary to explain the effects of alcohol on a person's ability to form the requisite intent to commit felonious assault.
In addition, appellant argues that his attorney should have presented a forensic expert to examine the available medical evidence and to provide an opinion on whether the wound was the result of defensive or assaultive conduct. Appellant believes that a forensic expert would have aided the jury in determining if the cut was the result of self-defense, thereby providing at least a partial justification for his actions.
In general, the decision to call a witness is left to the sound discretion of trial counsel and falls within the ambit of trial strategy and tactics. State v. Brant (May 22, 1998), Portage App. No. 97-P-0019, unreported, at 4, 1998 WL 386183. As a result, courts have traditionally been reluctant to find ineffective assistance of trial counsel in those situations where an attorney fails to do so. Id. See, also, State v. Otte (1996), 74 Ohio St.3d 555,565-566; State v. Williams (1996), 74 Ohio St.3d 456;State v. Nicholas (1993), 66 Ohio St.3d 431, 436-437.
With respect to appellant's claim regarding his trial counsel's failure to present an expert on intoxication, we conclude that the failure to call such a witness does not amount to ineffective assistance. The issue of whether appellant's judgment was clouded by the effects of alcohol was a question for the jury to be answered by the evidence presented at trial, and each juror's personal experiences with the effects of alcohol. Nothing in this case suggests that appellant's intoxication was a matter "beyond the knowledge or experience possessed by lay persons[,]" or that expert testimony was necessary to dispel "a misconception common among lay persons[.]" Evid.R. 702. In fact, the Supreme Court of Ohio has previously noted that "jurors need no expert testimony to determine whether the accused was too intoxicated to be able to intend anything." State v. Cooey (1989), 46 Ohio St.3d 20, 26, citing State v. Wilcox (1982), 70 Ohio St.2d 182, 194. As a result, appellant has failed to establish that he received ineffective assistance of counsel on this matter.
As to whether appellant's trial counsel should have called a forensic expert, we reach the same conclusion. Appellant fails to show how expert opinion on the direction of the cut or the force used in making the cut would have helped his defense. There is nothing in the record to suggest that appellant was acting in self-defense when he cut Starks' neck. The fact that Starks' injury was not acutely life threatening was a miracle; thus, Starks' good fortune did not absolve appellant of liability for his actions. In addition, appellant's attorney had ample opportunity to cross-examine the treating physician in an effort to obtain favorable evidence. In fact, trial counsel's cross-examination focused on the seriousness of the injury, presumably as it may have related to the level of appellant's intent. Again, with the evidence at hand, appellant has failed to show that his attorney's actions fell below the level of reasonable representation or that he was prejudiced by those same actions.
Appellant next argues that his trial attorney was ineffective for failing to request a lesser included offense instruction on negligent assault. According to appellant, an instruction on negligent assault was appropriate due to his highly intoxicated condition and the fact that no one could positively attest to how or when Starks was cut. We disagree.
The record before us clearly shows that appellant's attorney asked the trial court for an instruction on negligent assault. However, the trial court denied this request, finding that intoxication does not diminish the element of intent.
Even if appellant's attorney had failed to make such a request, the result would be no different. "[T]he criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence." State v.Sneed (1992), 63 Ohio St.3d 3, 9. As a result, a requested jury instruction should be given if it is a correct statement of the law applicable to the facts in the case and it is not covered by the general charge. Id.
While negligent assault is a lesser included offense of felonious assault, a defendant is not automatically entitled to an instruction on a lesser included offense. State v. Kimbrough
(July 9, 1999), Lake App. No. 97-L-274, unreported, at 2, 1999 WL 540909. Instead, "* * * a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas
(1988), 40 Ohio St.3d 213, paragraph two of the syllabus; accordState v. Bell (1994), 97 Ohio App.3d 576, 581-582.
The primary difference between felonious assault and negligent assault is their respective mens rea requirements. A person is guilty of felonious assault if he/she knowingly causes or attempts to cause physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2). A person acts knowingly when "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
On the other hand, a person is guilty of negligent assault when he/she "negligently, by means of a deadly weapon * * * cause[s] physical harm to another * * *." R.C. 2903.14(A). A person acts negligently when, "because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature." R.C. 2901.22(D).
With the above definitions in mind, we must determine whether the evidence presented at trial would reasonably support both an acquittal on felonious assault and a conviction on a charge of negligent assault. Several witnesses saw appellant on the night in question with a knife in his possession. According to Crites' testimony, appellant was carrying this knife in his right-front pocket.[2] Furthermore, when appellant was arrested, officers discovered a knife near appellant with Starks' blood on the blade. Based on this evidence, it is quite apparent that Starks' injury was caused by that particular knife.
Although he never testified, appellant's primary argument is that the evidence was inconclusive as to when Starks was actually wounded. According to appellant, Starks could have been cut when the two men were wrestling on the ground and that this would mean, at most, that appellant acted "negligently" rather than "knowingly."
There is no evidence in the record to support appellant's interpretation. Crites testified that when he first saw the two men on the ground, appellant was on his back and Starks was on top of him, also on his back. That is consistent with Starks' claim that appellant initially grabbed him around the neck from behind. Furthermore, Starks' wound is visually consistent with a knife slash. Although Starks readily admitted that he does not know exactly when the wound occurred, the evidence presented at trial supports the theory that he was cut sometime during the initial contact of appellant's hands with Starks' neck because once Starks removed appellant's hands from his throat, Stark stated that appellant never came into contact with his neck again.
In addition, the nature of the wound does not support a theory that it was the result of negligence. Starks received an almost four inch slash to his neck. The knife had to be in appellant's right-front pants pocket or in appellant's hand. Because the weapon accompanied appellant on his flight, a logical conclusion would be that it was in his hand.
Moreover, there was no testimony elicited at trial to show that the knife was still in appellant's pocket during the confrontation and that Starks was somehow accidentally cut. If the weapon were in his pants pocket, it is impossible to contemplate how the wound was achieved, particularly in light of Starks' testimony that it was only appellant's hand that ever made contact with his neck. As a result, it is a reasonable assumption that appellant intentionally drew his knife, a voluntary action, not a negligent one. The fact the knife was out at all supports the argument that appellant acted "knowingly." Crites' testimony supports this theory because it is consistent with the idea of an unexpected attack. Specifically, Crites heard Starks say "[m]an, what are you doing? Let go of me."
Appellant's intoxication is also not a valid basis in which to support a negligent assault instruction. The trial court properly instructed the jury that voluntary intoxication was not a complete defense to any crime and that it can only be considered in determining whether or not appellant had the ability to form the specific intent to commit felonious assault. Moreover, the trial court also properly instructed that the burden of proof was on appellant to produce evidence showing that at the time of the attack he was so influenced by alcohol as to be unable to act in a knowing manner. The law of Ohio is such that the fact that appellant was drinking on the night of the attack, by itself, can not be the impetus for an instruction on negligent assault.
Based on the above analysis, we conclude that there was no evidence upon which a reasonable juror could find that appellant acted negligently in cutting Starks' throat. Accordingly, the trial court was correct in denying the request for a negligent assault instruction.
Finally, appellant argues that his attorney was ineffective for failing to object to certain remarks made by the prosecutor in his closing argument. Specifically, appellant takes issue with the prosecutor's characterization of Starks' injury being the result of an "execution style" attack when, under appellant's interpretation of the evidence, there was nothing introduced at trial to support such a characterization.
"`The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" State v.Babbitt (Sept. 30, 1999), Ashtabula App. No. 98-A-0109, unreported, at 9, quoting State v. Holloway (1988), 38 Ohio St.3d 239,244. Moreover, a review of the transcript of appellant's trial does not reveal any instance in which the prosecutor referred to the attack as conducted in an "execution style."
The prosecutor does, however, make several remarks regarding the fact that appellant grabbed Starks around the neck from behind and that the cut could have occurred at this time. Although it was never conclusively established when Starks was injured, "prosecutors may properly argue all reasonable inferences from the evidence." State v. Santilli (Apr. 25, 1997), Ashtabula App. No. 96-A-0039, unreported, at 3, 1997 WL 269311. Furthermore, appellant has not shown that there is a reasonable probability that he would have been acquitted had his attorney objected to the prosecutor's remarks. Consequently, appellant's claim that he was deprived of the effective assistance of counsel due to his trial counsel's failure to object to the prosecutor's remarks is not well-taken.
Based on the foregoing analysis, this court concludes that appellant has failed to show that his trial counsel's representation fell below an objective standard of reasonableness or that the results of the trial would have been different if his attorney had called certain expert witnesses, had been granted a negligent assault instruction, or objected to particular remarks by the prosecutor. Thus, appellant's first assignment of error is without merit.
In his second assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal. Specifically, appellant contends that the evidence presented at trial demonstrated that, due to his high level of intoxication, he was incapable of acting "knowingly." He further argues that because he was intoxicated from his prolonged drinking, he was unable to perform the most basic of tasks, such as talking and walking. As a result, appellant believes that, taking all of these facts into consideration, the state failed to prove that he acted knowingly when he assaulted Starks. For the following reasons, we disagree.[3]
 Under Crim.R. 29, the trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. Accordingly, a motion for judgment of acquittal under Crim.R. 29 should be granted only where the evidence is insufficient to sustain a conviction. State v. Apanovitch (1987), 33 Ohio St.3d 19, 23.
Thus, an appellate court must apply the same standard in reviewing a denial of a motion for acquittal as if it were reviewing a challenge to the sufficiency of the evidence. When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 443 U.S. 307. See, also, State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 14, 1994 WL 738452.
As we noted earlier, the state was required to prove that appellant violated R.C. 2903.11 which provides in pertinent part:
"(A) No person shall knowingly:
"* * *
 "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *."
R.C. 2901.22(B) defines knowingly and provides that:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
While appellant argues that the submitted evidence was insufficient to show he acted "knowingly" due to his intoxication, voluntary intoxication is not a complete defense to crime. Statev. Gibson (June 27, 1997), Portage App. No. 95-P-0125, unreported, at 7, 1997 WL 402352. However, it is admissible for the purpose of showing that the defendant was incapable of forming the specific intent to commit a crime. Id. In addition to the limited purpose for which evidence of voluntary intoxication can be used, this court has held that evidence of "simple" intoxication is insufficient to negate the element of specific intent. State v. Platt (Dec. 16, 1994), Ashtabula App. No. 94-A-0015, unreported, at 16, 1994 Ohio App. LEXIS 5704.
A review of the record reveals that the state presented sufficient evidence to prove, beyond a reasonable doubt, that appellant acted knowingly. There is no question that appellant had been drinking on the day of the attack. Several witnesses testified that they saw appellant at various times during the day and night and that he had an odor of alcohol about him. However, these same witnesses also testified that appellant was able to communicate and walk under his own power. In fact, appellant was commonly known to drink on a regular basis by those in the community. As a result, while appellant may have been intoxicated at the time of the attack, the evidence does not show that he was unable to act in a knowing manner.
Moreover, when appellant and Starks were seperated, appellant fled the scene when Starks told Crites that his neck had been cut. In addition, while appellant was waiting to be booked at the police station, he made several comments to one of the officers about the race of the victim and that he "couldn't believe that this was happening to him over a worthless fucking nigger." These comments demonstrate that appellant was well aware of his actions and who he had attacked.
Based on the record before us, we conclude that the jury could have reasonably found that appellant acted "knowingly" beyond a reasonable doubt. The trial court properly instructed the jury on the effect of voluntary intoxication. Furthermore, it was within the province of the jury to judge the credibility of the witnesses and the evidence to determine to what extent, if at all, appellant's actions were adversely affected by intoxication, and we will not disturb those findings on appeal. Appellant's second assignment of error is without merit.
In his final assignment of error, appellant argues that the jury's verdict was against the manifest weight of the evidence. Again, appellant claims that the evidence presented at trial actually proved that appellant was incapable of forming the necessary intent to commit felonious assault due to his high level of intoxication.
When reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983), 20 Ohio App.3d 172,175. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380,387. Accord, State v. Duong (Dec. 11, 1998), Trumbull App. No. 98-T-0026, unreported, at 2, 1998 WL 964315.
Moreover, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion.Thompkins at 390 (Cook, J., concurring). Additionally, the reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
After reviewing the entire record and weighing the evidence presented by the state and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's conviction for felonious assault. In the case at bar, the evidence shows that appellant understood his own actions. Soon after cutting Starks, appellant fled the scene. Moreover, upon his arrest, appellant made several derogatory comments about Starks' race and expressed disbelief that he could get in trouble for his
conduct. Accordingly, appellant's third assignment of error is without merit.
For the foregoing reasons, appellant's assignments of error are all without merit. The judgment of the trial court is affirmed.
FORD, P.J., concurs,
O'NEILL, J., dissents with Dissenting Opinion.
[1] Calling Starks' injury a four inch cut does not do it justice. The photos of the wound would more likely be present on a corpse, rather than on a victim who survived a vicious attack.
[2] The shirt appellant was wearing on the night of the attack only had a left-hand pocket. Thus, the knife had to have been in the right-front pocket of his pants.
[3] Appellant does not challenge the sufficiency of the evidence on any other element of felonious assault. Accordingly, we will limit our discussion to whether or not appellant acted "knowingly."
 DISSENTING OPINION