TIM McCORMACK, P.J.:
{¶ 1} Defendant-appellant Yosef Abdal Salam Alhweiti appeals from his conviction for perjury. For the reasons that follow, we affirm his conviction.
Procedural History and Substantive Facts
{¶ 2} In July 2015, Alhweiti was charged in a multiple-count indictment that included charges of engaging in a pattern of corrupt activity, conspiracy, several motor-vehicle offenses, receiving stolen property, and perjury. Prior to trial, the state moved to dismiss all charges against Alhweiti except the perjury. The court granted the state's motion, and on February 1, 2017, a jury trial commenced on the sole charge of perjury.
{¶ 3} At trial, the state presented the following witnesses: Thorin Freeman, assistant chief counsel of the Office of Principal Legal Advisor within the department of Immigration and Customs Enforcement ("ICE"); Elliot Landrau, Cleveland police detective; and Detective Patrick Foye, with the Lakewood Police Department. In his defense, Alhweiti presented the expert testimony of Wayne Benos.
{¶ 4} Alhweiti, a non-United States citizen, initially entered the United States on a visitor's visa in June 2002. In April 2011, Alhweiti prepared a Form I-485, seeking an adjustment of his citizenship status. The application included a Form G-325, Biographic Information, that contained a section regarding employment. This section requested "[a]pplicant's employment [in the] last five years," to which Alhweiti responded "None." Alhweiti's information was provided under oath.
{¶ 5} Thorin Freeman, assistant chief counsel with ICE, represented the immigration office at Alhweiti's adjustment hearing held in December 2012. During that hearing, Alhweiti, once again, stated that he had not been employed in the United States prior to the hearing.
{¶ 6} The state presented the testimony of two detectives who testified that they observed Alhweiti working. Cleveland police detective Elliot Landrau testified that while out on patrol, he would see Alhweiti at his place of employment, which was a gas station in the detective's district in Cleveland. Detective Landrau explained that Alhweiti was a witness in a crime the detective was investigating in June 2012 and the detective sought Alhweiti's assistance at the gas station where Alhweiti was working.
{¶ 7} Lakewood police detective Patrick Foye similarly testified that he had observed Alhweiti on several occasions working at a gas station in Cleveland. The *1141 detective stated that in November 2014, he followed up on an investigation that led him to the gas station where Alhweiti worked, and during this investigation, the detective interviewed Alhweiti. Alhweiti was Mirandized and the interview was recorded. During the interview, Alhweiti stated that he had worked at the gas station full time for four years and covered some shifts for people for three years prior to his full-time status.
{¶ 8} During Freeman's direct testimony, he explained the process of an adjustment hearing, the typical length of a hearing, and how the direction of a hearing can change:
Q: How long do these hearings last?
A: Depends on the hearing. * * * Sometimes they are * * * straightforward, 35 minutes. Sometimes they can go for several days.
Q: If you are going to have a hearing like that, you are aware of all the issues that are in question before you start?
A: I don't want to say all of them. Sometimes through generalized questioning, somebody will say something and you realize, whoa, there is actually another issue here. Sometimes you can have a thin file that you think will be 35 minutes and it turns into a two-day affair. Sometimes there are additional questions, you find out additional information that has to be explored.
Q: Is it fair to say, then, that you could have a surprise answer that would change what you are doing that day?
A: Absolutely.
{¶ 9} Freeman testified regarding the importance of an applicant's work history and how an applicant's responses to questions regarding employment can change the line of questioning:
When I saw [that Alhweiti] didn't have [a social security number] on his forms, for a guy that had been here I think at the time of the hearing it was around 10 years, that's just not common sense to me. I'm curious as to how you are supporting yourself and that's also important in terms of discretion for the judge to know, in terms of there [are] forms that go along with that. I don't know what to put on these forms. There [are] a number of avenues that we could explore, given the answers to those questions.
* * *
[W]ork history can become very important to us for a number of reasons. Number one, for an adjustment application, you have to prove that you are entitled to the court's discretion. We are going to look at positive factors in that.
Negative factors is an immigration violation. Immigration violation * * * is working in contravention of the visa on which you came * * *. Another negative factor, or perhaps positive factor, is are you paying taxes, are you filing your taxes. These are things we need to know. These are discretionary decisions made by the judge.
* * *
[T]he court simply looks at the individual, what are your positive equities and what are your negative equities. If the positive equities outweigh the negative equities and you are admissible, you will be granted permanent residency. If the negative equity outweighs the positive ones, you will be denied permanent residence.
{¶ 10} Immigration expert Wayne Benos testified on Alhweiti's behalf. Benos testified that, typically, an individual applying for an adjustment of status is not permitted to have "unauthorized employment." However, the law provides an exception to *1142 those applicants applying for adjustment of status based upon marriage to a United States citizen, an immediate relative. Therefore, where Alhweiti may have had unauthorized employment, this employment would not be a bar to an adjustment of status, because he was married to a United States citizen. And within that context, Benos stated, the fact that Alhweiti answered "yes" or "no" regarding employment does not prevent him from adjusting his status.
{¶ 11} However, Benos testified that although he did not believe the fact that Alhweiti was working affected his adjustment of status, "there is an issue as to whether or not answering falsely like this would have cut off a line of inquiry that could have led to discovery of inadmissibility." And on cross-examination, Benos conceded that working creates other potential issues that could lead to a bar of an adjustment status, including whether the individual who is working is paying or filing taxes. Benos stated that the issue concerning whether an applicant is paying his or her taxes, among other issues, is something the judge has the discretion to consider in determining whether or not to grant someone lawful permanent resident status.
{¶ 12} Again on cross-examination, Benos testified that a willful misrepresentation can cut off a material line of inquiry, and he explained how a misrepresentation can affect the outcome of the proceeding:
Q: Does a willful misrepresentation cut off a material line of inquiry?
A: Yes.
* * *
Q: And you mentioned that a willful misrepresentation is a bad thing?
A: Yes.
Q: Why do you think it's a bad thing?
A: It's always bad to lie to the court. You don't want to lie to the court. You don't want to lie to anybody.
Q: And if the judge has discretion in these hearings and he finds out that you lied, could things go badly for you?
A: It could.
Q: As a government representative, you might be wondering what you don't know in addition to what you discover was a willful misrepresentation, isn't that correct?
A: I always wonder, yes.
Q: You will be left wondering if he willfully misrepresented this, do we have to check out other things more carefully?
A: Yes.
{¶ 13} After the state rested, Alhweiti moved the court for Crim.R. 29 acquittal, arguing the state failed to demonstrate the materiality of the false statement concerning Alhweiti's employment status. The court denied the motion. Defense counsel renewed his motion at the close of all the evidence. The court again denied the defendant's motion for acquittal. Subsequently, the jury found Alhweiti guilty of perjury. The court then sentenced Alhweiti to two years of community control sanctions.
{¶ 14} Alhweiti now appeals his conviction and assigns one error for our review: The trial court erred to the prejudice of defendant-appellant in failing to grant an acquittal pursuant to Crim.R. 29 as it relates to the element of materiality.
Perjury
{¶ 15} In his sole assignment of error, Alhweiti contends that the trial court erred in denying his Crim.R. 29 motion for acquittal because the state failed to present sufficient evidence of an essential element of perjury-materiality.
*1143 {¶ 16} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Cleveland v. Pate , 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571, 2013 WL 6730791, ¶ 12. Crim.R. 29(A) and this court's review for sufficiency of the evidence require the same analysis. Id. , citing State v. Mitchell , 8th Dist. Cuyahoga No. 95095, 2011-Ohio-1241, 2011 WL 917015, citing State v. Tenace , 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.
{¶ 17} When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks , 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. A court cannot enter a judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. State v. Apanovitch , 33 Ohio St.3d 19, 23, 514 N.E.2d 394 (1987). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." State v. Thompkins , 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).
{¶ 18} Alhweiti was convicted of perjury in violation of R.C. 2921.11(A). Perjury is defined as knowingly making a false statement under oath, "or knowingly swear[ing] or affirm[ing] the truth of a false statement previously made," when the statement is material. R.C. 2921.11(A).
{¶ 19} Proof of the "falsity" of the statement cannot rely "solely upon contradiction by testimony of one person other than the defendant." R.C. 2921.11(E). Thus, a conviction of perjury is precluded where there is no independent corroboration. State v. Allen , 1st Dist. Hamilton No. C-990310, 2000 WL 192141, 2, 2000 Ohio App. LEXIS 563, 7 (Feb. 18, 2000) ; 1974 Committee Comment to R.C. 2921.11(E) ("This section narrows the requirement for corroboration by stating merely that conviction is precluded where proof that the statement involved was false depends entirely on its contradiction by one person other than the defendant"). To satisfy the burden of proof under this statute, "the prosecution needs only adduce a scintilla more evidence than the evidence offered by one witness testifying to the falsity of the statement in question." State v. Fawcett , 5th Dist. Tuscarawas No. 85-A01-006, 1985 WL 6486, 2, 1985 Ohio App. LEXIS 7036, 4 (Aug. 23, 1985).
{¶ 20} A statement, or "falsification," is "material" regardless of its admissibility "if it can affect the course or outcome of the proceeding." R.C. 2921.11(B).
The test for materiality is an objective one. By using the word "can," R.C. 2921.11(B) makes it irrelevant whether the false statement actually influenced or affected the decision-making process of the trier of fact. The standard is whether the false statement was capable of influencing the trier of fact on the issue before it. The materiality of a false statement is a question of fact.
(Citations omitted.) State v. Smith , 2015-Ohio-1736, 32 N.E.3d 517, ¶ 8 (8th Dist.) ; State v. Irvin , 6th Dist. Wood No. WD-14-019, 2015-Ohio-798, 2015 WL 995684, ¶ 20 (stating that a rational trier of fact could find a false statement that has the potential to influence a magistrate in her decision to be material);
*1144 State v. Douglas , 3d Dist. Marion No. 9-05-24, 2005-Ohio-6304, 2005 WL 3150302, ¶ 14 (stating R.C. 2921.11(B) does not require that the outcome actually be affected); State v. Bell , 97 Ohio App.3d 576, 579, 647 N.E.2d 193 (11th Dist.1994) (finding plain language of R.C. 2921.11(B) means a statement is false if it can affect the outcome of a proceeding, not if it actually affects the outcome).
{¶ 21} Specifically in the context of immigration proceedings, a misrepresentation-or a false statement-is material if it "has a natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed." Kungys v. United States , 485 U.S. 759, 770, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). Statements that are capable of influencing the outcome of a proceeding "are those that conceal disqualifying facts or that prevent or hinder the discovery of disqualifying facts." Id. at 787, 108 S.Ct. 1537.
{¶ 22} There is no dispute that Alhweiti made a false statement under oath: he represented to immigration officials that he was not employed when, in fact, he had been working for several years. The issue on appeal is whether that false statement was material. Here, we find the state presented sufficient evidence that Alhweiti's false statement could affect the outcome of Alhweiti's immigration proceedings.
{¶ 23} The evidence established that the court has wide discretion in determining whether to grant lawful permanent residence to an applicant. In its discretion, the court weighs the positive "equities" with the negative "equities," and if the negative equities outweigh the positive equities, the court will deny permanent residency. Benos testified that lying to the court is always bad, and if a judge discovers that an applicant lied in a hearing, "things could go badly" for the applicant. Benos stated that the court will wonder what else the applicant is concealing, and the court will likely wish to inquire further. Additionally, the testimony established that an applicant's work history is significant in that an individual's employment could lead to issues concerning whether that individual is paying taxes on their income, and such issues could lead to a bar of an adjustment status. Therefore, by not telling the truth about his employment, Alhweiti prevented the court from the discovery of information that could have barred his adjustment status. Had Alhweiti admitted that he had been working, the outcome of the immigration proceedings could have been different.
{¶ 24} Based upon the above, and after viewing the evidence in a light most favorable to the state, we find that a rational trier of fact could have found that Alhweiti's lie concerning his employment could have affected the outcome of his adjustment hearing and was therefore material. Thus, we conclude that sufficient evidence supports the conviction.
{¶ 25} Alhweiti's sole assignment of error is overruled.
{¶ 26} Judgment affirmed.
EILEEN T. GALLAGHER, J., and
LARRY A. JONES, SR., J., CONCUR