OPINION
{¶ 1} Defendant-Appellant, Jerome Douglas, appeals a judgment of the Marion County Court of Common Pleas, sentencing him upon his conviction for perjury. On appeal, Douglas asserts that the trial court erred by failing to permit the jury to consider the lesser included offense of falsification; that the evidence was insufficient to support his conviction and that the conviction was against the manifest weight to the evidence; that the trial court committed prejudicial error by permitting the State to dismiss a prospective black juror; that the trial court erred in considering facts not found by the jury during sentencing in violation of Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531; and, that Douglas was denied his right to a fair trial and due process of law as a result of the numerous errors that occurred at his trial. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} On February 14, 2004, Douglas was arrested at his mother's house after Fran Freeman called 911, claiming that Douglas had beat her up. On February 16, 2004, a complaint was filed against Douglas. On February 19, 2004, a preliminary hearing was held on the complaint. During the hearing, Douglas testified that he was familiar with Freeman, because they had had a relationship in 2002. He also testified that currently he did not have a relationship with Freeman. Additionally, he stated that on February 14, 2004, he "* * * was at home with a friend and my mother and um, my stepdad (sic.) can testify to that." (Preliminary Hearing Tr. p. 2.) Douglas went on to state that he was no where near Freeman on February 14, 2004, and that he had not seen Freeman with a bloody nose that day.
 {¶ 3} In March of 2004, Douglas was indicted for domestic violence in violation of R.C. 2929.25(A), a felony of the fourth degree. Additionally, in May of 2004, a second indictment was filed against Douglas for perjury in violation of R.C. 2929.11(A), a felony of the third degree. The second indictment stemmed from Douglas' testimony at the preliminary hearing, which was different from statements made by Douglas during jailhouse telephone conversations to Freeman.
 {¶ 4} In March of 2005, the indictments were joined, and Douglas was tried on both counts. The jury found Douglas not guilty of domestic violence and the lesser included offense of assault. However, Douglas was found guilty of perjury.
 {¶ 5} Subsequently, a sentencing hearing was held, and the trial court sentenced Douglas to two years in prison for the sole count of perjury. It is from this judgment Douglas appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED BY FAILING TO PERMIT THE JURY TO CONSIDER THELESSER INCLUDED OFFENSE OF FALSIFICATION AS PROPERLY REQUESTED BYDEFENDANT
 Assignment of Error No. II THE JURY'S VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THEEVIDENCE AND WITHOUT SUFFICIENT EVIDENCE BEYOND A REASONABLE DOUBT FORITS FINDING OF GUILTY.
 Assignment of Error No. III THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY PERMITTING THE STATE TODISMISS A PROSPECTIVE BLACK JUROR THROUGH A PREEMPTORY CHALLENGE WITHOUTSATISFYING THE MANDATES OF BATSON vs. KENTUCKY, 476 US 79 (1986).
 Assignment of Error No. IV THE TRIAL COURT ERRED IN SENTENCING DEFENDANT TO A TERM OF TWOYEARS.
 Assignment of Error No. V UPON REVIEW OF THE TRIAL COURT'S TRANSCRIPTS AND RECORD, IT IS CLEARTHE DEFENDANT WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW BECAUSE OFNUMEROUS ERRORS IN THIS CAUSE AND DEFENDANT SHOULD HAVE BEEN GRANTED ANEW TRIAL.
 {¶ 6} Due to the nature of appellant's claims, we will be addressing the assignments of error out of order.
 Assignment of Error No. II {¶ 7} In the second assignment of error, Douglas asserts that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Specifically, Douglas argues that while the jury may have found that he lied about his whereabouts, his statements during the preliminary hearing were not material. We disagree.
 {¶ 8} Because "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different," we will address each separately. State v. Thompkins (1997),78 Ohio St.3d 380, para. two of the syllabus.
 {¶ 9} We will first address Douglas' claim that the evidence was insufficient to support the finding that he was guilty beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as recognized in State v. Smith (1997),80 Ohio St.3d 89.
 {¶ 10} In the case sub judice, Douglas was charged with perjury in violation of R.C. 2921.11(A). R.C. 2921.11(A) provides:
(A) No person, in any official proceeding, shall knowingly make a falsestatement under oath or affirmation, or knowingly swear or affirm thetruth of a false statement previously made, when either statement ismaterial.
 (B) A falsification is material, regardless of its admissibility inevidence, if it can affect the course or outcome of the proceeding. It isno defense to a charge under this section that the offender mistakenlybelieved a falsification to be immaterial.
 {¶ 11} Douglas asserts that the evidence is insufficient to support his conviction for perjury, because his conduct was not material to the domestic violence charges.
 {¶ 12} As noted above, at the preliminary hearing, Douglas testified that he had been in a relationship with Freeman, but that the relationship had ended in 2002. Additionally, he testified that he currently did not have a relationship with Freeman and that on February 14, 2004, he "* * * was at home with a friend and my mother and um, my stepdad (sic.) can testify to that." (Preliminary Hearing Tr. p. 2.) Finally, during the preliminary hearing Douglas testified unequivocally that he was no where near Freeman on February 14, 2004, and that he had not seen Freeman with a bloody nose that day.
 {¶ 13} At trial, two CDs were admitted into evidence. Each of the CDs contained phone calls placed by Douglas, while he was in jail, to Freeman. During these phone conversations, Douglas and Freeman talked at length about their current relationship. Additionally, during the conversations, Douglas stated that he was at Freeman's house on February 14, 2004, and that he did hit her during the incident.
 {¶ 14} Based upon the testimony presented at the preliminary hearing and the CDs introduced into evidence, the State clearly presented sufficient evidence that Douglas made false statements under oath during an official proceeding. Accordingly, the only issue remaining is whether Douglas' false statements were material. Based upon the plain language of R.C. 2929.11(B), a false statement is material if it can affect the outcome of a proceeding. R.C. 2929.11(B) does not require that the outcome actually be affected.
 {¶ 15} Douglas argues that his statements were not material because there was sufficient evidence to indict him for domestic violence without his testimony at the hearing. However, we do not believe that this is the type of "affect" the legislature had in mind when it drafted the meaning of materiality. Rather, we are convinced that because Douglas' statement, that he was not present during the events, clearly could have affected the outcome of the proceedings they are material. In other words, if Douglas had not been present at the scene, then he could not have hit Freeman. Accordingly, his false statements are material under R.C. 2929.11(B), and we find that the State has produced sufficient evidence to establish all the elements of perjury.
 {¶ 16} We will next address Douglas' claim that the conviction was against the manifest weight of the evidence. When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 17} Here, Douglas argues that because he was not convicted of the underlying domestic violence charge, he cannot be convicted of perjury. As noted above, during the preliminary hearing Douglas testified to more than his not being involved an incident of domestic violence. Douglas also testified that he had not seen Freeman on the day of the incident and that he had not been in a relationship with Douglas since 2002. With the admission of the jailhouse telephone conversation CDs, these statements were proven to be false. Thus, upon review of the record, we cannot say that in weighing all of the evidence we find that "the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 18} In sum, having found that the State presented sufficient evidence to support Douglas' conviction for perjury and that such evidence is not against the manifest weight of the evidence, the second assignment of error is overruled.
 Assignment of Error No. I {¶ 19} In the first assignment of error, Douglas asserts that the trial court erred by failing to include an instruction for the lesser included offense to perjury, falsification.
 {¶ 20} An instruction on a lesser included offense is not required unless the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213, 216; see, also, Statev. Kidder (1987), 32 Ohio St.3d 279, 282-83. Thus, it is within a trial court's discretion to refuse to instruct the jury on a lesser included offense. State v. Mitchell (1990), 53 Ohio App.3d 117, 119-20. Absent a showing of abuse of discretion, the trial court's jury instruction stands.
 {¶ 21} In State v. Deem (1988), 40 Ohio St.3d 205, para. three of syllabus, the Ohio Supreme Court held that "[a]n offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." (citations omitted).
 {¶ 22} R.C. 2921.11 sets forth the elements for the offense of perjury, which is a felony of the third degree. R.C. 2921.11 provides:
(A) No person, in any official proceeding, shall knowingly make a falsestatement under oath or affirmation, or knowingly swear or affirm thetruth of a false statement previously made, when either statement ismaterial.
 (B) A falsification is material, regardless of its admissibility inevidence, if it can affect the course or outcome of the proceeding. It isno defense to a charge under this section that the offender mistakenlybelieved a falsification to be immaterial.
Additionally, R.C. 2921.13 sets forth the elements for the offense of falsification, which is a misdemeanor of the first degree. R.C. 2921.13
provides:
(A) No person shall knowingly make a false statement, or knowinglyswear or affirm the truth of a false statement previously made, when anyof the following applies:
 (1) The statement is made in any official proceeding.
 {¶ 23} As noted above, falsification carries a lesser penalty than perjury. Accordingly, the first prong of Deem is satisfied. As to the second prong of the Deem test, we cannot conceive of any situation in which perjury could be committed without falsification being committed. Finally, perjury, the greater offense, requires proof that the false statement was "material." There is no such element required to prove the commission of falsification, the lesser offense. Accordingly, falsification under R.C. 2921.13(A)(1) is a lesser included offense of perjury. See State v. Peterman (July 28, 1992), 4th Dist. No. 521.
 {¶ 24} We now look to the question of whether a falsification charge should have been given to the jury. As noted above, an instruction on a lesser included offense should be given only when the evidence warrants it. Thomas, 40 Ohio St.3d at para. two of the syllabus. In Thomas, the Supreme Court went on to discuss when an instruction on a lesser included offense is warranted. Specifically, the Court noted:
`Even though so defined, a charge on the lesser included offense is notrequired, unless the trier of fact could reasonably reject an affirmativedefense and could reasonably find against the state and for the accusedupon one or more of the elements of the crime charged, and for the stateand against the accused on the remaining elements, which by themselveswould sustain a conviction upon a lesser included offense.'
 The meaning of this language is that even though an offense may bestatutorily defined as a lesser included offense of another, a charge onthe lesser included offense is required only where the evidence presentedat trial would reasonably support both an acquittal on the crime chargedand a conviction upon the lesser included offense.
Id., citing Kidder, 32 Ohio St.3d at 282-83.
 {¶ 25} Accordingly, an instruction on the lesser included offense of falsification will only be given in a perjury trial when, on the evidence presented, a jury could reasonably find against the State on the element of materiality and still find for the State on the defendant's act of making false statements in an official proceeding.
 {¶ 26} Based upon the foregoing discussion of materiality in the second assignment of error, we cannot find that jury could reasonably find against the State on that issue and still find for the State on Douglas' act of making false statements in an official proceeding. Accordingly, the first assignment of error is overruled.
 Assignment of Error No. III {¶ 27} In the third assignment of error, Douglas asserts that the trial court committed reversible error by permitting the State to dismiss a prospective black juror in violation of Batson v. Kentucky (1986),476 U.S. 79, 106 S.Ct. 1712.
 {¶ 28} In Batson v. Kentucky, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." Id. at 89. Thus,Batson established that a criminal defendant can demonstrate a violation of his equal protection rights pursuant to the Fourteenth Amendment to the United States Constitution by a showing that the prosecutor's use of peremptory challenges at the defendant's trial was used to intentionally exclude members of the defendant's race.
 {¶ 29} Batson delineated a three-step procedure for evaluating claims of racial discrimination in peremptory strikes. "First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination." State v. White
(1999), 85 Ohio St.3d 433, 436, citing Batson, 476 U.S. at 96-98.
 {¶ 30} To determine if a violation of Douglas' constitutional rights has occurred, we must apply the test delineated in Batson to the facts of this case. In the case sub judice, the prosecutor exercised one of her peremptory challenges to exclude a potential juror who was an African-American. Upon review of the record, the total number of African-Americans in the venire is unclear. Following the prosecutor's challenging this juror, Douglas' counsel timely objected to the prosecutor's exercise of her peremptory challenge and the State responded to Douglas' objection.
 {¶ 31} The first determination usually is whether Douglas has established a prima facie case of intentional discrimination. Baston,476 U.S. at 96. However, the issue of whether a prima facie case of intentional discrimination has been established need not be the subject of our review. In Hernandez v. New York (1991), 500 U.S. 352, 359,111 S.Ct. 1859, the United States Supreme Court Stated that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."
 {¶ 32} Here, the prosecutor offered an explanation and the trial court ruled on the question of intentional discrimination in response to Douglas' Batson objection. Accordingly, we proceed to the second step of the Batson inquiry and determine whether the prosecutor presented to the trial judge a race-neutral explanation for the strike. Following Douglas'Batson objection, the prosecutor stated the following on the record:
First of all, the first prong is that there has to be a pattern ofdiscrimination. There is no patters (sic.) on the one juror. Second ofall, we do have a race neutral explanation. The juror made it very clearthat he didn't think we ought to be here because if they're gonna (sic.)be getting back together it's just gonna (sic.) start all over again. Hisdiscussion on his views were very similar to the other individuals that Itried to excuse for cause.
(Trial Tr. p. 62.)
 {¶ 33} The second step of the Batson process does not require an explanation that is persuasive or plausible. Purkett v. Elem (1995),514 U.S. 765, 767, 115 S.Ct. 1769. As the Supreme Court noted:
[T]he issue is the facial validity of the prosecutor's explanation.Unless a discriminatory intent is inherent in the prosecutor'sexplanation, the reason offered will be deemed race neutral. * * * It isnot until the third step that the persuasiveness of the justificationbecomes relevant — the step in which the trial court determines whetherthe opponent of the strike has carried his burden of proving purposefuldiscrimination.
Id., citations omitted. Moreover, Batson noted that "the prosecutor's explanation [in the second step] need not rise to the level justifying exercise of a challenge for cause." 476 U.S. at 97.
 {¶ 34} The prosecutor's proffered explanation in this case, that she struck the juror because of his view that he did not believe the prosecution was worth his time if Douglas and Freeman were back together, is race neutral and satisfies the prosecutor's step two burden of articulating a nondiscriminatory reason for the strike. Thus, the inquiry properly proceeded to step three, where the trial court found that the prosecutor was not motivated by discriminatory intent.
 {¶ 35} Any conclusion by the trial court that the prosecutor did not possess discriminatory intent in the exercise of its peremptory challenges will not be reversed on appeal absent a determination that it was clearly erroneous. State v. Hernandez (1992), 63 Ohio St.3d 577, 583. Here, the trial court ultimately allowed the prosecutor's challenge. While the trial court did not make a specific finding that the prosecutor tendered a race neutral explanation, such a finding can be assumed from the trial court's allowance of the prosecutor's challenge. Upon review of the record, we are satisfied that the trial court's finding was not clearly erroneous. Specifically, the following took place during voir dire:
Prosecutor: So you think there might be some good reasons why a victimmight not come in here and testify?
 Jurors: (Nods heads affirmatively.)
 Prosecutor: Can you two gentlemen, does that make sense to you? Do youthink there might be some reasons?
 Challenged Juror: Only reason I can see she don't come and testify, shestill got something in the heart for him and she hate to open up too muchof a can or something where you give `em two or there weeks later theywent back together and they're gonna go right back at it again and againand again. Don't make sense for all of us to tie up all this stuff ifit's gonna happen.
 Prosecutor: So you think maybe we shouldn't be prosecuting these casesif they're gonna go back together?
 Challenged Juror: I'm not saying that. If we gonna hear his testimonyanyway. Now, if it come down to where something has puzzled us, sheshould be brought in to put her up there and let her explain why are wepuzzled about this, all she got is explain what happen. Is she gonna comeback and say this up there, two weeks later they're all back together. Iknow we just wasting time on her period. Before they —
 Prosecutor: And that'd what I guess I'm trying to get at. Is that whatyou're saying, if indeed that were the case, there's some situationswhere we shouldn't be deciding this case, they shouldn't be in a criminalcourt even if it happened, because they're gonna go back and do itagain?
 Challenged Juror: I'm not saying that. I'm just saying we're here to doour job and she should be able to — she should be here also.
(Trial Tr. pp. 33-34.)
 {¶ 36} Based on the foregoing, we are satisfied that the prosecutor's race neutral explanation is clearly supported by the juror's statements. Accordingly, we cannot find that the trial court's determination that the prosecutor challenged this juror for race neutral reasons is clearly erroneous, and the third assignment of error is overruled.
 Assignment of Error No. IV {¶ 37} In the fourth assignment of error, Douglas contends that the trial court violated his right to a trial by jury when it imposed a prison term upon him based on findings not admitted by him or submitted to a jury. Douglas relies upon the holding in Blakely v. Washington,542 U.S. 296, for this proposition. This Court has previously ruled that the holding in Blakely does not apply to Ohio's sentencing scheme. Statev. Trubee, 3rd Dist. No. 9-03-65, 2005-Ohio-552, at ¶¶ 16-38. Therefore, Douglas' fourth assignment of error overruled.
 Assignment of Error No V {¶ 38} In the fifth assignment of error, Douglas asserts that he was denied his right to a fair trial and due process, based upon the cumulative errors which took place during the trial. While Douglas' assignment of error specifically references cumulative error, his argument goes on to address the inclusion of evidence at trial, which was not raised in a separate assignment of error. Specifically, Douglas argues that the trial court erred in admitting the 911 tape, the jailhouse telephone conversation CDs and the preliminary hearing tape into evidence based upon Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354. As a result, we will first address Douglas' argument regarding the inclusion of this evidence.
 {¶ 39} In Crawford, the Supreme Court addressed an issue involving the Confrontation Clause of the Sixth Amendment, which states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Crawford, 541 U.S. at 38. The question of whether a criminal defendant's rights under the Confrontation Clause have been violated is reviewed under a de novo standard. UnitedStates v. Robinson (6th Cir. 2004), 389 F.3d 582, 592.
 {¶ 40} In Crawford, defendant's wife, exercising her marital privilege, did not testify at his trial. 541 U.S. 40. Before trial, however, in a tape-recorded statement to police, defendant's wife described the stabbing her husband was charged with. Id. at 39. The statement conflicted with defendant's claim that the stabbing was in self-defense. Id. Defendant argued that the wife's statement was not only inadmissible hearsay, but violated his Sixth Amendment right of confrontation. Id. at 40. The trial court determined that the statement, though hearsay, was reliable and trustworthy, and the jury was allowed to hear it. Id. Defendant was subsequently convicted. Id. at 41.
 {¶ 41} On appeal, the United States Supreme Court scrutinized the reliability of the wife's testimonial hearsay statement under the Confrontation Clause. Id. at 42-50. The Court went on to conclude that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id. at 69 (emphasis added). Accordingly, the Court held that where testimonial evidence is at issue the Constitution requires unavailability and a prior opportunity for cross examination. Id. at 68.
 {¶ 42} While the Court determined that unavailability and prior cross-examination was required for testimonial evidence, the Court also found that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framer's design to afford the State flexibility in their development of hearsay law-as does Roberts, and as would an approach that exempted such statements from Confrontation scrutiny altogether." Id. (emphasis added.) Accordingly, the Court held that with nontestimonial hearsay the Ohio v. Roberts (1980), 448 U.S. 56,100 S.Ct. 2531, reliability test still applies.
 {¶ 43} Finally, while the Court in Crawford did not "spell out a comprehensive definition of `testimonial,'" it did give the following examples of what may be included as testimonial statements:
`[E]x parte in-court testimony or its functional equivalent — that is,material such as affidavits, custodial examinations, prior testimony thatthe defendant was unable to cross-examine, or similar pretrial statementsthat declarants would reasonably expect to be used prosecutorially,'`extrajudicial statements . . . contained in formalized testimonialmaterials, such as affidavits, depositions, prior testimony, orconfessions,' `statements that were made under circumstances which wouldlead an objective witness reasonably to believe that the statement wouldbe available for use at a later trial.'
Id. at 51-52. (citations omitted.)
 {¶ 44} Thus, under Crawford the first issue is whether the testimony is testimonial or nontestimonial. While the Court did not specifically define testimonial, the above examples show that statements made during a police investigation or court proceedings will qualify as testimonial.U.S. v. Cromer (6th Cir. 2004), 389 F.3d 662, 672-73. Additionally, it seems that statements made under circumstances that would lead a reasonable person to conclude that such statements would later be available for use at trial also qualify as testimonial under Crawford.Crawford, 541 U.S. at 52; see, also, Cromer, 389 F.3d at 673.
 {¶ 45} Looking first at the 911 tape, the tape is of Fran Freeman stating that she had just been beaten up by her boyfriend, that she was pregnant and that she needed help from the police. Several appellate courts in Ohio have found that 911 tapes are nontestimonial underCrawford. As noted by Ninth District in State v. Stahl, 9th Dist. No. 22261, 2005-Ohio-1137, ¶ 14, "* * * 911 calls have been held to be nontestimonial, despite the fact that they are commonly known to be recorded and inevitably end up in court, because a 911 call is not so much testimony but a desperate plea for help." See, also, State v. Byrd,
160 App.3d 538, 542, 2005-Ohio-1902, ¶ 17, State v. Newell, 5th Dist. No. 2004CA00264, 2005-Ohio-2848, ¶ 23. Upon review of the 911 call, Freeman was clearly upset and her call was clearly a call for help. Accordingly, we cannot find that the 911 call was testimonial underCrawford.
 {¶ 46} Next, Douglas argues that the jailhouse telephone conversations should not have been admitted under Crawford, without showing that Freeman was unavailable to testify. As noted above, the first issue underCrawford is whether the evidence is testimonial, which has been defined as statements made during a police investigation or court proceeding or statements that were made under circumstances that would lead a reasonable person to conclude that such statements would later be available for use at trial. Cromer, 389 F.3d at 672-73, Crawford,541 U.S. at 52. Here, the jailhouse telephone conversations were between Douglas and Freeman, while Douglas was in jail after his arrest. These statements were neither made during a police investigation nor would a reasonable person conclude that such statements would later be available for use at trial. Accordingly, these statements do not qualify as testimonial, and there is no violation under Crawford.
 {¶ 47} Douglas also asserts that the admission of his testimony from the preliminary hearing was error under Crawford. As noted above,Crawford is based upon the Confrontation Clause of the Sixth Amendment, which deals with a defendant's rights in a criminal trial "* * * to be confronted with the witnesses against him." Crawford, 541 U.S. at 38
(emphasis added). Douglas' statements at the preliminary hearing do not fall within the Confrontation Clause, because they are his own statements as opposed to a witness' statements. Additionally, Evid.R. 801(D) defines statements by a party as non-hearsay, which are admissible at trial. Accordingly, the trial court did not err in admitting Douglas' preliminary hearing testimony at trial.
 {¶ 48} Having found that the trial court did not err in admitting the 911 tape, the jailhouse telephone conversations and Douglas' preliminary hearing testimony, we will now address the cumulative effect of any errors. In State v. DeMarco (1987), 31 Ohio St.3d 191, para. two of the syllabus, the Ohio Supreme Court found that a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal. Having found that all of Douglas' assignments of error as well as the evidentiary issues are without merit, we conclude that the cumulative effect of the errors does not warrant reversal. Thus, the fifth assignment of error is overruled.
 {¶ 49} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Bryant and Shaw, J.J., concur.