OPINION *Page 2 
{¶ 1} Defendant-Appellant, Randall D. Stribling, appeals the judgment of the Allen County Court of Common Pleas convicting him of aggravated robbery and sentencing him to a four-year prison term. On appeal, Stribling argues that the trial court erred when it sustained the State's peremptory challenge of the sole African-American juror on the panel; that the trial court erred in allowing evidence of other acts to be presented to the jury; and, that his conviction is against the manifest weight of the evidence. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} In April 2008, the Allen County Grand Jury indicted Stribling on one count of aggravated robbery in violation of R.C. 2911.01(B), a felony of the first degree. The indictment arose from an incident during which it was alleged that Stribling attempted to remove a law enforcement officer's weapon from his holster during a struggle. Stribling entered a plea of not guilty to the offense as charged.
 {¶ 3} In July 2008, the case proceeded to jury trial, at which the following testimony was heard.
 {¶ 4} Deputy Dana Sutherland of the Allen County Sheriffs Office testified that on February 24, 2008, he was dispatched to a Meijer store in regards to a suspected shoplifting incident involving multiple bottles of cologne; that the *Page 3 
Meijer loss prevention officers informed him that the perpetrator was a black male accompanied by a young female; that the loss prevention officers informed him that the suspect and his companion left the store in a silver Ford vehicle and provided him with the license plate number; that he traced the license plate number to a Lima residence; that he drove to the residence and observed a silver Ford occupied by a male fitting the description pull into the garage; that he confronted the suspect with the allegations against him; that the suspect denied being at Meijer or shoplifting; that the suspect's girlfriend was also standing in the garage; that Deputy Rich Biclawski arrived to assist him; that the suspect became fidgety, nervous, and agitated; that he conducted a pat-down of the suspect for officer safety; that he felt a box near the suspect's ankle and observed that he was wearing two pairs of pants that had been taped shut with electrical tape; that he broke the tape and a sealed bottle of cologne fell out; that he told the suspect he was under arrest for theft and began to place him in handcuffs; that the suspect began to struggle with him and broke free from the officers; that he restrained the suspect again and they began to struggle; that he felt the suspect move his "duty belt" and saw the defendant pull on the handle of his duty weapon; that the weapon did not come out of the belt because the holster has safety features to prevent its removal; that he believed he told Deputy Biclawski "he's got my gun. Tase him" (trial tr., p. 166); that the suspect again broke free from the officers; that *Page 4 
the suspect attempted to turn the Taser on Deputy Biclawski; that Deputy Biclawski was able to pepper spray the suspect, but the suspect continued to struggle with the officers; that he removed his weapon and pointed it at the suspect, and the suspect attempted to grab at the muzzle of the weapon; that the officers were eventually able to handcuff the suspect and transport him to the sheriffs office; and, that the suspect told the officers his name was Floyd Hayne. Deputy Sutherland then identified Stribling as the suspect.
 {¶ 5} Deputy Biclawski testified that, on February 24, 2008, he was dispatched to assist Deputy Sutherland in investigating a theft incident; that he heard Deputy Sutherland tell the suspect that he was going to pat him down; that the officers recovered a cologne bottle from the suspect's pant leg; that Deputy Sutherland told the suspect that he was under arrest for theft and attempted to handcuff him; that the suspect began to resist and ran out of the garage; that Deputy Sutherland caught the suspect, "wrestled" with him, and said "tase him," but that he did not hear Deputy Sutherland say anything along the lines of "he's going for my gun" (trial tr., p. 177); that he did not see the suspect trying to grab Deputy Sutherland's gun, but he was distracted because he was attempting to deploy his Taser; that the suspect grabbed at his Taser; that the suspect broke free from the officers again, and he attempted to tase him for a second time, and the suspect attempted to turn the Taser on him and succeeded in shocking him; that *Page 5 
the suspect again broke free from the officers, but he was able to catch him and subdue him with pepper spray; that the suspect finally desisted and the officers took him into custody; and, that the entire struggle was very violent. Deputy Biclawski then identified Stribling as the suspect.
 {¶ 6} Sergeant Kevin Kitsey of the Allen County Sheriffs Department Detective Bureau testified that he investigated the incident; that the suspect informed him his name was Floyd Hayne; that the suspect stated that he took several bottles of cologne and put them into his pants in order to sell them to purchase shoes for his daughter; that the suspect stated that the officers struck him in the face and dragged him around; that he sent the suspect's fingerprints to the F.B.I. and learned that the suspect was not Floyd Hanye, but Randall Stribling; that he questioned Stribling again, and he admitted that he took the cologne in order to sell it to support his crack cocaine habit; that he stated he was probably high during the struggle with the officers; and, that he denied ever intentionally grabbing Deputy Sutherland's weapon, but acknowledged it was possible he may have grabbed at his belt or holster in trying to escape.
 {¶ 7} Felicia Henry, Stribling's girlfriend and his child's mother, testified that she witnessed much of the incident; that she saw the two officers pat down Stribling and tell him he was under arrest; that Stribling was not being compliant; that the officers attempted to handcuff Stribling, and he began fidgeting and *Page 6 
fighting with them; that one of the officers tased him; that she ran into the house for two minutes to get her shoes and came back outside; that seven or eight officers had arrived at that point; that the struggle took place inside the garage, outside of the garage in front of the police car, in the grass behind the police car, and in the street; that she never heard Deputy Sutherland say anything about his weapon or saw Stribling grab for the weapon; that she saw Stribling and the officers struggling; that Deputy Sutherland took his weapon out at one point and told Stribling, "Man, I'll kill you. Quit fighting" (trial tr., p. 216); and, that the struggle continued for approximately thirty to forty-five minutes.
 {¶ 8} Thereafter, the jury returned a verdict finding Stribling guilty of aggravated robbery, and the trial court sentenced him to a four-year prison term.
 {¶ 9} It is from this judgment that Stribling appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT'S RIGHT TO A FAIR TRIAL BY SUSTAINING THE PREEMPTORY [SIC] CHALLENGE OF THE STATE OF OHIO OF THE ONE AND ONLY AFRICAN AMERICAN JUROR ON THE PANEL.
 Assignment of Error No. II THE DEFENDANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. *Page 7 
 Assignment of Error No. III THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT IN ALLOWING OTHER ACTS EVIDENCE, SPECIFICALLY EVIDENCE THAT THE DEFENDANT GAVE A FALSE NAME TO LAW ENFORCEMENT TO BE PRESENTED TO THE JURY.
 {¶ 10} Due to the nature of Stribling's arguments, we elect to address his second and third assignments of error in reverse order.
 Assignment of Error No. I {¶ 11} In his first assignment of error, Stribling, who is African-American, argues that the trial court erred in sustaining the State's peremptory challenge to the sole African-American juror on the panel. Specifically, Stribling contends that the trial court should not have overruled his Batson challenge to the State's peremptory challenge of the juror because nothing in her statements or responses indicated any bias against the State, and because the State called attention to the juror's race being the same as Stribling's. We disagree.
 {¶ 12} In Batson v. Kentucky (1986), 476 U.S. 79, 89, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." Thus, Batson established that a criminal defendant can demonstrate a violation of his equal protection rights pursuant to theFourteenth Amendment to the United States Constitution by showing that the State's use of peremptory challenges at the *Page 8 
defendant's trial was used to intentionally exclude members of the defendant's race.
 {¶ 13} Batson delineated a three-step procedure for evaluating claims of racial discrimination in peremptory strikes: "`First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination.'" State v. Douglas, 3d Dist. No. 9-05-24,2005-Ohio-6304, ¶ 29, quoting State v. White (1999), 85 Ohio St.3d 433,436, citing Batson, 476 U.S. at 96-98.
 {¶ 14} Additionally, "`[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.'" Douglas, 2005-Ohio-6304, at ¶ 31, quoting Hernandez v. NewYork (1991), 500 U.S. 352, 359. See, also, State v. Pope, 3d Dist. No. 9-06-61, 2007-Ohio-5485.
 {¶ 15} Further, regarding the third step, the Supreme Court of Ohio has stated that:
 [T]he trial court may not simply accept a proffered race-neutral reason at face value, but must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual. "[T]he rule in Batson provides an opportunity to the *Page 9 prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it." Miller-El v. Dretke (2005), 545 U.S. 231, 251-252. If the trial court determines that the proffered reason is merely pretextual and that a racial motive is in fact behind the challenge, the juror may not be excluded. Id. at 252.
State v. Frazier, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 65.
 {¶ 16} Finally, on appeal, we will not reverse a trial court's finding of no purposeful racial discrimination unless it is clearly erroneous.State v. Were, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 61.
 {¶ 17} During voir dire, the State challenged the sole African-American juror on panel, Shitikka Odom. The following dialogue took place when the State questioned Juror Odom:
 [The State]: Your name is really familiar to me. Are you related to a Roger Odom? Okay. Now, I see a look on your face. How are you related to Roger? * **
 [Juror Odom]: I'm a niece.
 [The State]: Okay. Now, you understand, without getting into too many details, he has some criminal charges against him currently. Have you ever talked to him about his case?
 [Juror Odom]: No.
 [The State]: Are you close with him * * * do you see him a lot?
 [Juror Odom]: Yea.
 [The State]: Anything in what you may know about his case, do you feel that he's been treated unfairly by the prosecutor's office, or by law enforcement, or anything of that nature?
 [Juror Odom]: I really don't know nothing about the case and so I really can't say on that.
 [The State]: You haven't heard him talking about it? * * * Or griping about it or anything of that nature?
 [Juror Odom]: No. *Page 10 
 [The State]: * * * Now, [Stribling's counsel] had [several other jurors] put their hands out to notice the big difference that they have with the defendant. You too, put your hands out. Anything in your mind that thinks, you know, because of his color or anything like that that you couldn't sit here and be fair and impartial to both the State and the defendant? [Juror Odom]: No.
(Trial Tr., pp. 55-57).
 {¶ 18} At the close of voir dire, the State exercised its third peremptory challenge on Juror Odom. Thereafter, the following dialogue took place at the bench:
 [Stribling's Counsel]: At this point I'm going to have to raise a Batson challenge. * * * The panel that is currently in the jury box, well, of the twelve members [Juror Odom] is the only African-American. * * *
 [The State]: * * * [A]s far as a race neutral reason, * * * I'm directly involved in Roger Odom's case. He's been quite vocal regarding his disdain for the case and what's happened to him and things of that nature. She said she's close to him. Quite frankly, I don't trust her answers that she doesn't have any kind of knowledge or any pre-conceived notions. She had her arms crossed the entire time I was questioning her. She made a face upon me mentioning his name that I found, quite honestly, I felt like she had somewhat of an attitude about it. I get a sense from her that she is not particularly fond of the State. So, it was her demeanor largely and my own personal knowledge of her uncle's case and in particularity her saying she's close to her uncle that I have some concerns for her ability to be fair and impartial despite what she's stated during voir dire. * * *
 [The Court]: * * * I find that the fact that she is close to and related to an individual who is currently involved in a criminal case against him is a racially neutral reason to excuse her. I don't find that the defense has proven a purposeful racial discrimination. I find that the State has a racially neutral reason *Page 11 that they've stated and would overrule the objection and allow the peremptory strike to stand.
(Trial Tr., pp. 71-76).
 {¶ 19} Stribling contends that nothing in Juror Odom's statements indicated any bias against the State and that the State indicated its purposes were not racially neutral because it drew attention to the race of the juror. Since the State offered a race-neutral explanation for using a peremptory challenge on Juror Odom, which the trial court determined was appropriate, we need not examine the first step in theBatson analysis. Pope, 2007-Ohio-5485, at ¶¶ 11-12, citingDouglas, 2005-Ohio-6304, at ¶ 31. Additionally, considering the second step of the analysis, the prosecution stated that Juror Odom's uncle was involved in criminal proceedings and had been very vocal about his disdain for those proceedings; that Juror Odom stated she was close to her uncle; and, that Juror Odom's body language and demeanor indicated bias against the State. Upon review of the record, we cannot find that the trial court's allowing of the challenge was clearly erroneous.
 {¶ 20} Accordingly, we overrule Stribling's first assignment of error.Assignment of Error No. III
 {¶ 21} In his third assignment of error, Stribling argues that the trial court erred in allowing evidence of other acts to be presented to the jury. Specifically, Stribling contends that he was prejudiced by the introduction of evidence that he gave a false name to law enforcement. We disagree. *Page 12 
 {¶ 22} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Evid. R. 404(B). Such evidence may be admissible, however, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid. R. 404(B). Additionally, `"[i]t is to-day universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" State v. Eaton, (1969) 19 Ohio St.2d 145,150, citing 2 Wigmore, Evidence (3 Ed.) 111, Section 276.
 {¶ 23} The exceptions allowing the evidence "must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. Nevertheless, the admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. State v. Issa,93 Ohio St.3d 49, 64, 2001-Ohio-1290. Thus, our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issue about which Stribling complains. State v. Barnes, 94 Ohio St.3d 21, 23, 2002-Ohio-68. *Page 13 
 {¶ 24} Here, Stribling complains that the State should not have been permitted to introduce evidence that he gave a false name to law enforcement officers investigating the aggravated robbery incident. However, as stated in Eaton, supra, an accused's assumption of a false name is admissible as evidence of consciousness of guilt. Thus, we find that the trial court did not err in allowing this testimony to be presented to the jury.
 {¶ 25} Accordingly, we overrule Stribling's third assignment of error.
 Assignment of Error No. II {¶ 26} In his second assignment of error, Stribling argues that his conviction is against the manifest weight of the evidence. Specifically, Stribling contends that Deputy Sutherland was the only witness to testify as to the conduct giving rise to the charged offense and that none of the other witnesses' testimony corroborated his claims.
 {¶ 27} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in *Page 14 
exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 28} Stribling was convicted of aggravated robbery in violation of R.C. 2911.01(B), which provides:
 (B) No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
 (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties.
 (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.
 {¶ 29} Here, Stribling contends that the only witness who testified that he attempted to remove Deputy Sutherland's duty weapon from his duty belt was Deputy Sutherland himself, and that none of the other witnesses could corroborate his testimony. Although both Deputy Biclawski and Felicia Henry testified that they did not see Stribling grab or attempt to grab Deputy Sutherland's weapon, their testimony was not in conflict with Deputy Sutherland's. Deputy Biclawski candidly testified that, at the time Deputy Sutherland asked him to tase Stribling, he was distracted because he was attempting to deploy his Taser. Additionally, Henry testified that she was not present for part of the incident, that the struggle took place in multiple locations, and that the incident persisted for approximately *Page 15 
thirty to forty-five minutes. Therefore, neither Deputy Biclawski or Henry could testify unequivocally that Stribling did not grab Deputy Sutherland's weapon. Further, Deputy Sutherland testified that he both felt the suspect move his duty belt and saw the defendant pull on the handle of his duty weapon. As such, we find that Stribling's conviction was not against the manifest weight of the evidence.
 {¶ 30} Accordingly, we overrule Stribling's second assignment of error.
 {¶ 31} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 PRESTON, P.J. and WILLAMOWSKI, J., concur. *Page 1